**Larry Charbert HAYES, Plaintiff-Appellant,**

v.

**Dan WALKER, Governor of the State of Illinois, et al., Defendants-Appellees.**

**No. 76–1460.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 8, 1977.

Decided May 23, 1977.

---

Terry Rose Saunders, Jerold S. Solovy, Chicago, Ill., for plaintiff-appellant.

Gerri Papushkewych, Asst. Atty. Gen., Springfield, Ill., William J. Scott, Atty. Gen., Chicago, Ill., for defendants-appellees.

Before BAUER and WOOD, Circuit Judges, and SHARP, District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant Larry Charbert Hayes (hereinafter referred to as plaintiff) while a prisoner at the Stateville Correctional Center of the Illinois Department of Corrections filed this civil rights action pro se pursuant to 42 U.S.C. § 1983 against defendants-appellees Dan Walker, Governor of Illinois, Allyn R. Sielaff, Director of the Illinois Department of Corrections, Dennis J. Wolff, Warden of the Sheridan Correctional Center of the Illinois Department of Corrections, and eleven additional named defendants, all officials of the Illinois Department of Corrections (hereinafter referred to collectively as defendants). In his complaint, plaintiff challenged the constitu-

tionality of disciplinary proceedings initiated against him.

The central issue on appeal is whether the district court properly dismissed plaintiff's complaint for failure to state a cause of action. Specifically plaintiff asserts that he was denied due process of law by the defendants in the prison disciplinary proceedings in the following ways: (1) defendants improperly prevented plaintiff from calling witnesses or introducing documentary evidence in his own behalf; (2) the Institutional Adjustment Committee failed to state the reasons for the disciplinary action taken; (3) the Institutional Adjustment Committee's finding of guilty was arbitrary since it was not based upon evidence; and (4) plaintiff was placed in segregation with no notice of a violation and without a hearing. Plaintiff also asserts that the district court should not have dismissed his complaint since defendants deprived him of his first amendment rights by disciplining him for participation in a group meeting.

For the following reasons, we find that the lower court should not have dismissed plaintiff's complaint.

The facts out of which this appeal arises are as follows.

On May 12, 1975, plaintiff along with fifty to sixty inmates of the Sheridan Correctional Center, Sheridan, Illinois, gathered in the resident yard during a regular yard period. Plaintiff alleges in his complaint that the group discussed ways and means of forming a legal education committee, overcoming "the arbitrary problem" within the discipline procedure, and alleviating racial tension. Shortly after midnight on May 12, 1975, plaintiff was placed in isolation. At 2:00 a. m. on May 13, 1975, plaintiff received a Resident Violation Report written by Sergeant Watts. According to the Resident Violation Report, the prisoners who gathered in the prison yard were complaining about prison rules relating to Resident Violation Reports. The Resident Violation Report further indicated

---

[*] District Judge Allen Sharp of the United States District Court for the Northern District of Indiana is sitting by designation.

that plaintiff, who appeared to be a leader of the gathering, stated that the prisoners would have to write to Springfield to get the rules changed and if that did not work "they would have to act on it." When asked by one of the inmates what if nothing is done in the next six months, the Resident Violation Report states that plaintiff replied, "You know what we will do." At 4:00 p. m. on May 13, 1975, plaintiff received a Resident Violation Report from Warden Wolff charging him with violation of State of Illinois, Department of Corrections, Administrative Regulation No. 804(II)(F)(1)(g), conspiracy to incite to riot and commit mutinous acts.

On May 14, 1975, the Institutional Adjustment Committee initiated a review of the Resident Violation Report filed against plaintiff. The hearing was continued until the following day to allow the committee to consider various motions filed by plaintiff. On May 15, 1975, the Institutional Adjustment Committee found plaintiff guilty of violating § 804(II)(F)(1)(g). The Institutional Adjustment Committee based its report on the Resident Violation Reports as written and on a report by Internal Investigator Toney.

As a result of the Institutional Adjustment Committee's decision plaintiff was placed in segregation, lost nine months of statutory good time, was demoted from grade A to grade C, and on May 16, 1975, was transferred to Stateville Correctional Center where he remains in isolation.

The Administrative Review Board on June 10, 1975, recommended that plaintiff's grievance respecting the disciplinary action taken against him be denied. Allyn R. Sielaff, after reviewing the recommendation by the Administrative Review Board, denied plaintiff's grievance.

The district court on November 14, 1975, granted leave to plaintiff to file a complaint and proceed in forma pauperis. On February 25, 1976, the lower court permitted plaintiff to amend his complaint but granted defendants' motion to dismiss plaintiff's complaint as amended on the grounds that the complaint "fails to state a claim upon which relief can be granted and is completely frivolous and absurd document." The lower court on March 18, 1976, denied plaintiff's motion to vacate the February 25, 1976, order dismissing the complaint. This appeal followed.

As this court recently stated in *French v. Heyne,* 547 F.2d 994 (7th Cir. 1976):

We approach the questions raised in this appeal mindful that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, [78 S.Ct. 99, 102, 2 L.Ed.2d 80] (1957). Equally applicable here is the admonition that pro se complaints, due to the lack of legal expertise that accompanies their preparation, are to be liberally construed. *Haines v. Kerner,* 404 U.S. 519, [92 S.Ct. 594, 30 L.Ed.2d 652] (1972).

1. Denial of Witnesses

Plaintiff originally submitted a list of fifty-four prisoners to be called as witnesses on his behalf before the Institutional Adjustment Committee. At the hearing before the Institutional Adjustment Committee, plaintiff identified ten prisoners from this list and requested that only they be initially called as witnesses:

I have a listing of approximately fifty or more residents who are requesting an interview in my behalf. In the interest of security I am requesting that ten of the fifty be called at this time and the others reviewed by the Committee. The ten names I would like to submit is:

· · · ·

(Exhibit II–C p. 6)

The Institutional Adjustment Committee in denying plaintiff's motion stated as follows:

The Committee moves the motion for witnesses be denied for the following reasons: The residents requested would be placed in highly compromising positions with regards to possible retribution from other residents and to call resident wit-

nesses could prove hazardous to both witnesses and institutional security. (Exhibit II–C p. 6)

In light of the denial of his motion for witnesses to be called, plaintiff requested a stay in the proceedings to enable him to obtain affidavits from his witnesses. The Institutional Adjustment Committee also denied this motion. (Exhibit II–C pp. 8–9)

Plaintiff cites *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), for the proposition that absent a showing of compelling reasons by prison authorities, due process requires that a prisoner be allowed to call witnesses in his own behalf in a prison disciplinary proceeding. Plaintiff argues that since no justification was offered for the peremptory denial of his right to call witnesses in the case at bar, he was deprived of due process of law.

The defendants assert that the Court in *Wolff, supra,* did not grant prisoners an unconditional right to call witnesses. Defendants claim that the Court limited this right to where its exercise would not be unduly hazardous to institutional safety or correctional goals. Defendants conclude that the reasons offered by the Institutional Adjustment Committee to justify denial of plaintiff's request to call witnesses have not been attacked as false or in bad faith and were proper.

For the following reasons we find that the district court erroneously dismissed this portion of plaintiff's complaint.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court held that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566, 94 S.Ct. at 2979. The Court in noting that the right to call witnesses is not unrestricted stated, "[o]rdinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individu-

al cases may be essential to carrying out the correctional program of the institution." 418 U.S. at 566, 94 S.Ct. at 2979. The Court further indicated that the determination of the parameters of the right to call witnesses in a particular case must be based upon a balancing of "the inmates interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required." 418 U.S. at 566, 94 S.Ct. at 2980. The Court warned that the judiciary "should not be too ready to exercise oversight and put aside the judgment of prison administrators." 418 U.S. at 566, 94 S.Ct. at 2979. On the contrary, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." 418 U.S. at 566, 94 S.Ct. at 2980. "Within the reasonable limitations necessary in the prison disciplinary context, [the Court in *Wolff*] suggested, but did not require, that the disciplinary committee 'state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.' Id., at 566, 94 S.Ct., at 2980." *Baxter v. Palmigiano,* 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976).

■ Thus, the right to call witnesses is a "limited right". *Baxter,* 425 U.S. at 321, 96 S.Ct. 1551. Broad discretion is properly given to prison officials since "[t]he operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980.

■ This broad discretion is not, however, unbounded. *Cardaropoli v. Norton,* 523 F.2d 990, 998 (2nd Cir. 1975). Due process does not permit the automatic exclusion of the right to call witnesses. See *Mawhinney v. Henderson,* 542 F.2d 1, 3 (2nd Cir. 1976); *Walker v. Hughes,* 386 F.Supp. 32, 41–2 (E.D.Mich.1974); *Powell v. Ward,* 392 F.Supp. 628, 631 (S.D.N.Y.1975), modified on other grounds, 2 Cir., 542 F.2d 101.

Since "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell,* 418 U.S. at 558, 94 S.Ct. at 2976, at least a limited judicial review of the broad discretion exercised by prison officials is essential. Such limited review is especially warranted in light of the importance of the right to present the testimony of witnesses for an accused inmate "who obviously faces a severe credibility problem when trying to disprove the charges of a prison guard." *Wolff,* 418 U.S. at 583, 94 S.Ct. at 2988 (Marshall, J., dissenting).

█ The record now before this Court does not permit even limited review of the Institutional Adjustment Committee's exercise of discretion. The Institutional Adjustment Committee offered in justification of its action only broad conclusory findings of possible hazard both to potential witnesses and to institutional security which applied to all of the proposed witnesses on plaintiff's list. There is no indication in the record that the Institutional Adjustment Committee examined each proposed witness for the relative benefit or danger in his testimony. Similarly, this court cannot determine whether the broad conclusion applicable to all of the witnesses was improper as to individual witnesses. Since the record is barren of support for these broad conclusions, we find that the case must be returned to the district court for a determination of whether the Institutional Adjustment Committee's decision was a proper exercise of discretion.

We are not requiring that a statement of reasons be given to support the denial of a request for witnesses. We hold only that some support for the denial of a request for witnesses appear in the record. This will enable a court to make limited inquiry into whether the broad discretion of prison officials has been arbitrarily exercised.

If we were to allow broad unsupported findings as were offered in the present case to support the Institutional Adjustment Committee's decision, a prisoner's limited right to call witnesses could be arbitrarily denied in any case and thereby be rendered meaningless. This court would be unable to exercise even limited review of such broad findings. Thus, if a proposed witness is not to be called, support for that decision and not just a broad conclusion should be reflected in the record. Prison officials should look at each proposed witness and determine whether or not he should be allowed to testify.

We also note that the Institutional Adjustment Committee did not follow applicable regulations governing disciplinary hearings since it failed to consider each proposed witness individually. State of Illinois, Department of Corrections, Regulation No. 804(II)(B)(6) provides in part:

> The resident shall be allowed to call witnesses and obtain documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and will not extend the hearing beyond all reasonable limits. *The committee will state its reasons for refusing to call or interview a witness, whether it be for irrelevance, lack of necessity or the hazards presented in the individual cases.* (emphasis added)

█ This court recognizes the need for broad discretion in prison officials in their determination as to whether a prisoner should be allowed to call witnesses or present affidavits. By requiring that the underlying support for the denial of particular witnesses be reflected in the record of the prison proceedings, we do not mean to unduly interject the court into this aspect of prison decision making. On the contrary, courts should exercise only a limited review of the exercise of prison officials' discretion to ensure that arbitrary decision making is not undertaken.

Thus, on remand the district court should determine whether the Institutional Adjustment Committee properly barred plaintiff from calling any witnesses or presenting any documentary evidence by way of affidavits.

## 2. Statement of Reasons for Disciplinary Action

After finding plaintiff guilty as charged and specifying the disciplinary action to be taken,[1] the Institutional Adjustment Committee responded as follows to plaintiff's inquiry as to the basis for the Committee's decision:

> The Committee's decision is based on the violation report as written and upon the report by the special investigator which during your absence was made part of the record.
>
> (Exhibit II–C p. 11)

Plaintiff relying on *Wolff, supra,* argues that the Institutional Adjustment Committee failed to give an adequate statement as to the evidence relied upon to support the disciplinary action taken. Defendant asserts, on the other hand, that the Committee clearly indicated what evidence was relied upon to support its decision.

First, the Institutional Adjustment Committee violated their own regulations governing the required content of the statement of reasons by merely adopting the Resident Violation Report and the report of the special investigator as a basis for its decision. State of Illinois, Department of Corrections, Administrative Regulation No. 804, Section II–B(9) provides:

> The resident must be given a written statement, signed by the Chairman, of the evidence relied upon by the majority of the committee and the specific disciplinary action taken, as well as the reasons for disciplinary action. If personal or institutional safety is involved, this state-

ment may properly exclude certain items of evidence, but the statement should then indicate the fact of the omission. The statement of decision should include, wherever appropriate, a short explanation of why information purporting to exonerate the resident was discounted, if it was discounted. *It will not be sufficient for the committee's decision to simply adopt and copy the exact wording of the Resident Information Report.* The resident's copy of the committee's statement of decision must be given to him either immediately after the hearing or within 10 hours after the decision is made. (emphasis added)

In addition, the Institutional Adjustment Committee did not meet minimum due process requirements as set forth in *Wolff, supra.* This court has recognized that *Wolff* requires a " 'written statement by the factfinders as to the evidence relied upon and reasons' for the disciplinary action." *Wolff,* 418 U.S. at 564, 94 S.Ct. at 2978, cited in *Aikens v. Lash,* 514 F.2d 55, 60 (7th Cir. 1975), vacated on other grounds, 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191, reinstated as modified on other grounds, 7 Cir., 547 F.2d 372; *Burbank v. Twomey,* 520 F.2d 744 (7th Cir. 1975). As the Court stated in *Wolff,* the considerations underlying this requirement are the protection for a prisoner from collateral consequences of a disciplinary action and encouragement of fair administrative decision making:

> Written records of proceedings will thus protect the inmate against collateral con-

---

1. The Committee held as follows:

   Based on our review of the violation report and the report by the special investigator it is our motion that we find Mr. Hayes guilty as charged. We find that Mr. Hayes is guilty of conspiracy to incite to riot and commit mutinous acts. All Committee members concurred that Mr. Hayes be moved to the Segregation Unit, that his status be reviewed within 10 days, that he be referred to the Institutional Assignment Committee and recommendation of transfer and to Administrative Review by the Administrator of Institution Services further recommend that Mr. Hayes be demoted to "C" grade and that 9 months statutory good time be revoked from the minimum sentence. All members concurred.

   It is therefore the unanimous decision of the Committee that Mr. Hayes is guilty of conspiracy to incite to riot and commit mutinous acts. That Mr. Hayes be moved to the Segregation Unit, his status to be reviewed within 10 days, that he be referred to the Institutional Assignment Committee with recommendation for transfer and to Administrative Review by the Administrator of Institution Services. Further recommend that Mr. Hayes be demoted to "C" grade and that 9 months statutory good time be revoked from the minimum sentence.

   . (Exhibit II–C p. 11)

sequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. 418 U.S. at 565, 94 S.Ct. at 2979.

In *Aikens, supra,* this court examined the propriety of a district court order which required a written statement of findings of fact and conclusions based upon substantial evidence to be made available to inmates following disciplinary transfer hearings. In approving the use of the term "substantial evidence", the court stated:

As a practical matter, we fail to see the conflict defendants note between the term "substantial evidence" and the phrase "evidence relied on and reasons for the disciplinary action." Presumably, the Supreme Court did not contemplate in *Wolff,* where its use of the latter phrase in connection with the array of procedural rights provided was directed at protecting prisoners from subsequent collateral consequences, that these rights should be easily emasculated by allowing prison officials to infringe arbitrarily on an inmate's substantive due process right not to be found guilty except by an appropriate quantum of evidence. See, e. g., *Gomes v. Travisono,* 510 F.2d 537, 540 (1st Cir. 1974); *Wilwording v. Swenson,* 502 F.2d 844, 851 (8th Cir. 1974).

*Aikens,* 514 F.2d at 60.

In *Burbank v. Twomey,* 520 F.2d 744 (7th Cir. 1975), plaintiff argued that due process had been violated since the prison Disciplinary Committee stated as reason for punishment, "we accept the facts as stated" in the Inmate Violation Report, 520 F.2d at 746. Plaintiff claimed that a reasonably complete factual basis must be set out for the imposition of discipline. The district court dismissed this claim on the grounds that adoption of State of Illinois Department of Corrections, Administrative Regulation No. 804, Section II–B(9), the same regulation which we have found to be violated in the present case, had mooted the case. Plaintiff on appeal did not initially contest the lower court's finding of mootness. Defendants, however, stated in their reply brief that despite adoption of the new regulations, the defendants nonetheless considered the old practice to be constitutional. As a result, plaintiff argued that the case was not moot since this statement indicated that prison officials might revert to the old practice. This court ruled that the regulation provided all of the relief requested by plaintiff. Since the possibility that prison officials would ignore the regulation was speculative, we upheld the lower court's finding that the case was moot.

In *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir. 1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764, a case involving the adequacy of reasons for the denial of parole, this court stated that the following test was consistent with Mr. Justice White's analysis in *Wolff* of the minimum due process requirements for revocation of a prisoner's good-time credit:

In *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925 (2d Cir.), vacated as moot, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), the court said at page 934:

To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision . . . and the essential facts upon which the Board's inferences are based . . . . .

525 F.2d at 804.

■ The Institutional Adjustment Committee failed in the present case to give an adequate statement as to evidence relied on or reasons for the action taken. Rather than pointing out the essential facts upon which inferences were based, the Committee merely incorporated the violation report and the special investigator's report. This general finding does not ensure that prison officials will act fairly. Nor will this finding protect against subsequent collateral effects based on misunderstanding of the initial decision.

Thus, the district court erred in dismissing this portion of plaintiff's complaint.

3. Segregation without Prior Hearing

Plaintiff next argues that he was placed in segregation without prior notice or hearing.

■ This court has stated:

In situations such as the present, where prison authorities are allegedly reacting to emergency situations in an effort to preserve the safety and integrity of the institution, the state's interest in decisive action clearly outweighs the inmate's interest in a prior procedural safeguard. "[T]he possibility of widespread violence is a continuous condition of prison life. A good faith determination that immediate action is necessary to forestall a riot outweighs the interest in accurate determination of individual culpability before taking precautionary steps." *United States ex rel. Miller v. Twomey, supra*, 479 F.2d at 717. See also *Gomes v. Travisono*, 490 F.2d 1209, 1215 (1st Cir. 1973). *LaBatt v. Twomey*, 513 F.2d 641, 645 (7th Cir. 1975).

Thus, good faith response to apprehended emergency conditions within a prison justifies postponing procedural protection until after the event. *LaBatt*, 513 F.2d at 646. We also indicated that review of the exercise of discretion by prison authorities should be limited to situations where "bad faith or mere pretext on the part of prison authorities in the imposition of emergency

procedures" is alleged. *LaBatt*, 513 F.2d at 647. Absent an allegation of bad faith, "the underlying basis of decision must be deemed to be fully within [the] expertise and discretion [of prison officials] and, accordingly, is insulated from subsequent judicial review." *LaBatt v. Twomey*, 513 F.2d at 647.

■ Although plaintiff's complaint does not expressly allege bad faith in the decision by prison officials to place him in segregation without a prior hearing, plaintiff alleges in his complaint that both Sergeant Watts and Warden Wolff wrote a Resident Violation Report with malice and without facts to support allegations made. A liberal reading of this complaint leads this court to conclude that a sufficient allegation was made to warrant judicial review of the decision to place plaintiff in segregation without a prior hearing.

The district court, therefore, erred in dismissing this portion of plaintiff's complaint.

4. Evidentiary Support for Institutional Adjustment Committee's Decision and First Amendment Claim

Because of our disposition of the other issues in this case, we choose not to express an opinion on plaintiff's allegation that prison officials did not have evidence to support their decision. We believe that this question would more properly be considered by the district court.

Similarly, because of the disposition of this case, we need not reach the First Amendment claims raised by plaintiff.

CONCLUSION

For the foregoing reasons, the district court's order is hereby reversed and this case is remanded for further proceedings in light of this opinion.