**Walter GRANDISON**

v.

**Julius T. CUYLER, et al.**

**Civ. A. No. 82–2063.**

United States District Court,
E.D. Pennsylvania.

Oct. 12, 1984.

Adam Shapiro, Sprague, Levinson & Thall, Philadelphia, Pa., for plaintiff.

Mary E. Butler, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

LOUIS H. POLLAK, District Judge.

Walter Grandison, an inmate at the State Correctional Institution at Graterford, Pennsylvania, has brought this action seeking damages for the alleged denial of due process of law in connection with his assignment to the Graterford Restricted Housing Unit ("RHU") for several months during 1982. Defendants in this action have moved for summary judgment, and Magistrate William F. Hall, Jr. has filed a Report and Recommendation which concludes that defendants' motion should be granted.

Magistrate Hall's report was filed on March 29, 1984. Plaintiff filed objections to that report thirteen days later. In addition, on April 20, 1984, plaintiff moved to amend his complaint, which had been filed *pro se*, on the theory that he had been prejudiced by Magistrate Hall's difficulty in interpreting the original complaint. Defendants have opposed the motion to amend.

This court thus has before it both defendants' motion for summary judgment and plaintiff's motion to amend his complaint. Because my disposition of the former motion affects my disposition of the latter, and because our Court of Appeals has spoken on major issues in this case since Magistrate Hall filed his report, I will discuss both motions at some length.

## I. *Statement of Facts*

This action arises out of an alleged disturbance involving certain inmates and prison guards at the Graterford facility on January 24, 1982. According to the affidavit of defendant David L. Horwitz, a Corrections Officer at Graterford, the altercation involved "approximately 50 inmates armed or in the process of arming themselves with clubs, boards and knives." Affidavit of David L. Horwitz at ¶ 4. Officer Horwitz states that plaintiff was part of this disturbance, was armed with a wooden board, and refused to return to his cell when he was ordered to do so. *Id.* at ¶¶ 5–6. Plaintiff states that he observed no disturbance, and did not refuse the guard's lock-up order. Plaintiff's Affidavit at ¶¶ 14–16.

Officer Horwitz proceeded to file a misconduct report against plaintiff. That report was filed on January 24, the same day as the incident. On January 25, a guard came to plaintiff's cell with an Inmate Request for Representation and Witnesses Form. The guard told plaintiff that plaintiff would face a misconduct hearing regarding the incident of January 24. At this time, plaintiff requested that one Calvin Johnson represent him at the misconduct hearing. Plaintiff also requested that a witness be called on his behalf. Plaintiff told the guard the witness' name was Charles Moore, and said he believed Moore's inmate number was M2204. Plaintiff's Affidavit at ¶ 22. The guard then wrote this identification number on the form, placing a question mark above it.

On January 26, two days after the incident, plaintiff was transferred to RHU pending his misconduct hearing. That same day, plaintiff received a copy of the misconduct report.

The misconduct hearing was held on January 29, 1982. Plaintiff and his representative, Calvin Johnson, were both present at the hearing. No witnesses were present, although the officers who claimed to have seen plaintiff participate in the disturbance

had filed written reports. Charles Moore, the inmate who, according to plaintiff, would have corroborated plaintiff's account, was not present, because prison officials had found that prisoner number M2204 had been transferred to another facility before the alleged disturbance took place. Plaintiff later discovered that Charles Moore's identification number was not M2204, the number plaintiff had given the guard, but rather M2804. Plaintiff's affidavit, which is uncontradicted on this point, states that Moore was in fact in the general population of the Graterford facility at the time of the misconduct hearing. Plaintiff's affidavit at ¶ 29.

The hearing committee found plaintiff guilty of several violations of prison regulations and sentenced the plaintiff to six months in RHU. The sentence was subsequently sustained on administrative review.

According to plaintiff, these facts raise a whole host of violations of plaintiff's Fourteenth Amendment right not to be deprived of his liberty without due process of law. Because an understanding of the source and scope of plaintiff's liberty interest is critical to resolving these claims, I will briefly discuss the nature of that interest and the source of the law which defines it. Following that discussion, I will analyze the claims concerning plaintiff's pre-hearing confinement, the claims concerning the hearing itself, and, finally, the claims concerning post-hearing review procedures. The motion to amend will be discussed following the discussion of the post-hearing claims.

## II. *The Nature and Scope of Plaintiff's Liberty Interest*

█ Plaintiff is correct in asserting that he has a liberty interest in remaining in the general prison population. *Wolff v. McDonnell,* 418 U.S. 539, 555–57, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). *See Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). Although that interest is protected by the force of the United States Constitution, its existence depends on Pennsylvania law. *See Wolff,* 418 U.S. at 557–58, 94 S.Ct. at 2975–

76; *Hewitt,* 103 S.Ct. at 871. *Cf. Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 1747–48 & n. 10, 75 L.Ed.2d 813 (1983). In this instance, Pennsylvania has created a protectable liberty interest in remaining in the general prison population by enacting mandatory rules which define the circumstances under which that status may be abridged. 37 Pa.Code § 93.10; Bureau of Corrections Administrative Directive 801. *See Hewitt,* 103 S.Ct. at 871 & n. 6.

Plaintiff maintains that Pennsylvania law not only creates the protected liberty interest in this case, but also defines the process that is due before that interest may be infringed. Specifically, plaintiff argues that Bureau of Correction Administrative Directive 801, which sets forth the procedures which must be followed in connection with prison disciplinary action, defines the scope of Fourteenth Amendment due process for purposes of this action. The bulk of plaintiff's argument is thus directed at showing how the terms of that directive were violated in the course of plaintiff's disciplinary proceeding.

█ Magistrate Hall correctly rejected this argument in his report. *See* Report and Recommendation at 3. In both *Wolff v. McDonnell* and *Hewitt v. Helms,* the Supreme Court found that state prison regulations had given rise to a liberty interest in remaining in the general prison population. *Wolff,* 418 U.S. at 557–58, 94 S.Ct. at 2975–76; *Hewitt,* 103 S.Ct. at 871. Having found a protected interest, the Court in both cases proceeded to analyze the requirements of procedural due process based on factors no different from those applied in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See Wolff,* 418 U.S. at 559–72, 94 S.Ct. at 2976–82; *Hewitt,* 103 S.Ct. at 872–74 (citing *Mathews* ). As a result, the Court found in *Wolff* that the state-mandated procedures were constitutionally insufficient in some respects, 418 U.S. at 563–65, 94 S.Ct. at 2978–79, while in *Hewitt,* the relevant state law was more demanding than the Fourteenth Amendment. *See Hewitt,* 103 S.Ct. at 884 & n. 27 (Stevens, J., dissenting). Such results are not possible if the relevant state

law not only creates the interest but also defines the process that is due. These cases thus leave no doubt that the constitutional adequacy of the procedures afforded plaintiff is to be determined according to the standards developed in *Wolff v. McDonnell, supra, see Woods v. Marks,* 742 F.2d 770 (3d Cir.1984), and not by the provisions of Administrative Directive 801. *See also Drayton v. Robinson,* 719 F.2d 1214, 1218–19 (3d Cir.1983).

In support of his argument that violations of 801 constitute violations of due process under the Fourteenth Amendment, plaintiff relies heavily on *Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981). Plaintiff's argument both misconceives the holding of *Winsett* and ignores more recent cases which bear more directly on the question of what process is due in prison disciplinary matters. In *Winsett,* our Court of Appeals found that Delaware authorities violated due process when they denied a prisoner work release status "because of their fear of adverse public reaction and legislative reprisals against the prison system." 617 F.2d at 998. The court concluded that the Delaware statute governing work release gave rise to a liberty interest on the part of the prisoner, and that the consideration of a factor not contemplated by the work release program violated the prisoner's right to due process. *Id.* at 1007–08. This case might be analogous to *Winsett* if plaintiff were alleging that he was sentenced to disciplinary confinement because his hair was blond or because an influential legislator wanted him punished. Prison officials do not have the discretion to punish prisoners based on such criteria. One so punished is therefore denied due process of law, because the process which state law sets up for such adjudications is short-circuited; he is effectively denied its benefits.

Neither the allegations in the complaint nor the affidavits and exhibits submitted by the parties support any similar inference in this case. The theory of plaintiff's complaint is that the defendants did not grant him the procedural protections which Administrative Directive 801 required, and that this failure on defendants' part constituted a violation of the Fourteenth Amendment. To the extent that theory depends on the congruence of 801 and the due process clause, it is not viable under *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) and subsequent cases, if indeed it was viable before.

Although the Constitution does not encompass the precise restrictions of Administrative Directive 801, the due process clause does establish procedural requirements for the abridgement of plaintiff's interest in remaining in the general prison population. *Wolff v. McDonnell, supra,* 418 U.S. at 555–72, 94 S.Ct. at 2974–82. In addition to his claims regarding 801, plaintiff contends that these independent constitutional limits have been transgressed in this case. Accordingly, the discussion that follows applies the standard fixed by the due process clause to the actions taken against plaintiff in the Graterford prison facility in early 1982.

### III. *Claims Concerning Pre-Hearing Confinement*

■ Plaintiff's due process claim concerning his pre-hearing confinement takes two forms. First, plaintiff argues that he was unconstitutionally confined on January 26, since he was given no hearing of any sort before that initial confinement. Magistrate Hall properly found this claim without merit, given the strong public interest in prison safety, the serious charges being brought against plaintiff, and the brief period of the initial confinement in RHU. *See* Report and Recommendation at 7–10; *Bell v. Wolfish,* 441 U.S. 520, 545–47, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979) (discussed in Magistrate Hall's report). *Cf. Hewitt v. Helms, supra,* 103 S.Ct. at 873–74 (indicating that longer period of administrative confinement would require greater procedural protection).

■ Second, plaintiff contends that his confinement in RHU for three hours and fifteen minutes before receiving a copy of

the misconduct report violated Administrative Directive 801 and therefore the Fourteenth Amendment. I have already indicated that these two sources of law are not coextensive with regard to plaintiff's due process claims, and that point applies with special regard here. Administrative Directive 801, Part III B, requires that an inmate receive notice of the charges against him within three hours of his administrative confinement when he is confined, as was plaintiff in this case, pending disciplinary hearing. The prison officials' violation of this command was obviously slight in this case, and plaintiff has not alleged that this brief delay prejudiced him in any way in the subsequent proceeding. Moreover, I can find no authority for the proposition that the *Constitution* requires that notice of the proceedings against him be given plaintiff within three hours of administrative confinement. *Wolff v. McDonnell, supra,* mandates that prison officials give inmates notice of the charges they face twenty-four hours in advance of any disciplinary hearing, 418 U.S. at 564, 94 S.Ct. at 2978, but that requirement was concededly met here: the disciplinary hearing was not held until January 29, three days after plaintiff received a copy of the misconduct report. I can thus find no violation of plaintiff's right to due process in his pre-hearing confinement.

## IV. *Claims Concerning the Disciplinary Hearing*

Plaintiff raises a number of perceived procedural inadequacies in the disciplinary hearing itself. Three of these merit discussion here: (1) plaintiff's lack of meaningful access to his representative prior to the hearing, (2) the absence of the accusing officers from the hearing, and (3) the absence of Charles Moore, plaintiff's requested witness, from the hearing.

### A. *Inadequate Access to Representative*

■ In his affidavit, plaintiff states that he had a mere five minutes in which to meet with Calvin Johnson, his chosen representative, prior to his disciplinary hearing. Plaintiff maintains that this brief period was not "appropriate" within the meaning of Section III D3 of Administrative Directive 801, which requires that an inmate be permitted to meet with his representative for an "appropriate" period of time before the disciplinary hearing. It is difficult to argue with plaintiff's conclusion as to Administrative Directive 801; moreover, as a matter of sound policy and common fairness, prison officials should perhaps have provided plaintiff with more meaningful access to his sole representative in this matter. Nevertheless, the relevant constitutional standard is not defined by 801, but by the more flexible dictates of due process. *Cf. Drayton v. Robinson,* 719 F.2d 1214, 1218–19 (3d Cir.1983) (violations of 801 requirements regarding statement of reasons for continued administrative confinement did not necessarily constitute denial of due process under *Hewitt v. Helms, supra*). And it is established that due process does not require any representation in a proceeding of this sort. *Wolff v. McDonnell,* 418 U.S. at 569–70, 94 S.Ct. at 2981–82. Consequently, the provision of less than meaningful representation in the context of prison disciplinary hearings does not, in and of itself, constitute a denial of due process. *Id.*

### B. *Absence of Accusing Officers*

■ The claim derived from plaintiff's inability to examine his accusers at the hearing fails for the same reason. In *Wolff,* the Court expressly declined to require as a matter of due process that prison officials afford inmates the right to confront their accusers at disciplinary hearings. 418 U.S. at 567–69, 94 S.Ct. at 2980–81. In the course of its discussion the Court emphasized the strength of the institutional interests which may lead officials to deny inmates such confrontation, and also stressed that such interests may come into play even when the witnesses in question are guards rather than inmate-informants. *Id.* at 568–69, 94 S.Ct. at 2980–81. As a consequence of the difficulty of formulating any test which might comprehend all the relevant concerns, the Court left the

decision whether to permit confrontation and cross-examination to the discretion of prison officials. *Id.* at 569, 94 S.Ct. at 2981.

Since *Wolff,* the Court has held that prison officials need not state any reason for their decision not to call witnesses. *Baxter v. Palmigiano,* 425 U.S. 308, 321–22, 96 S.Ct. 1551, 1559–60, 47 L.Ed.2d 810 (1976). Nor may the absence of such an explanation alone give rise to a finding of abuse of discretion. *Id.* Plaintiff has offered no evidence or argument which might tend to show abuse of discretion here. Absent some such indication, I must grant defendants' motion on this issue.

C. *Absence of Plaintiff's Exculpatory Witness*

The failure to call Charles Moore to testify at the disciplinary hearing raises a more substantial due process question. The Supreme Court stated in *Wolff* that inmates "should be allowed to call witnesses," 418 U.S. at 566, 94 S.Ct. at 2979, but the Court also specifically declined to impose any inflexible constitutional requirements in this area:

> Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of

reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

*Id.* at 566–67, 94 S.Ct. at 2979–80. *See also Baxter v. Palmigiano,* 425 U.S. 308, 321–22, 96 S.Ct. 1551, 1559–60, 47 L.Ed.2d 810 (1976) (discussing *Wolff*).

The Third Circuit has recently interpreted this language to mean that prison officials' discretion, while broad, is still less than total:

> We are persuaded that the Supreme Court in *Wolff* did not intend to limit judicial review of prison officials' exercise of discretion to the extent that a prisoner's limited right to call witnesses could be arbitrarily denied in any case and thereby be rendered meaningless. On the contrary, *Wolff* contemplated a balancing of "the inmate's interest in avoiding [disciplinary sanctions] against the needs of the prison...." *Wolff,* 418 U.S. at 566 [94 S.Ct. at 2980]. Before prison officials can engage in the requisite balancing analysis, they should, at the very least, "look at each proposed witness and determine whether or not he should be allowed to testify."

*Woods v. Marks,* 742 F.2d 770, at 774 (3d Cir.1984) (quoting *Hayes v. Walker,* 555 F.2d 625, 630 (7th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977)). In the *Woods* case, prison officials had denied an inmate's apparent witness request by noting on the relevant form that no such request existed. At 771–72. Long after the disciplinary hearing was over, in the context of the inmate's section 1983 litigation, the responsible official filed an affidavit stating that he would not have called the witness even had he been aware of the inmate's request. *Id.* at 775. The Court of Appeals found a genuine issue of material fact as to the arbitrariness of the denial of the inmate's request, and accordingly reversed a district court grant of summary judgment. *Id.* at 775.

Here, as in *Woods,* the responsible officials apparently denied plaintiff's request for a witness because of a factual misunderstanding. The record shows that the guard who filled out the Inmate Request form recorded the proposed witness' number as "M2204," when in fact that number was "M2804." This mistake caused defendants to conclude that the witness plaintiff requested was not at Graterford at the time of the hearing or even at the time of the altercation for which plaintiff was charged. And the inmate request form shows that this conclusion was the reason why plaintiff's request was rejected. Plaintiff's affidavit states that in fact the would-be witness Charles Moore was in the facility at the time of the hearing and at the time of the disturbance.

■ Unlike the error in *Woods,* the mistake in this case was due largely to plaintiff's own misstatement. Plaintiff in his affidavit admits telling the guard filling out his inmate request form that he believed Charles Moore's number was M2204. Thus, the arbitrariness in defendants' conduct, if any, must be found in their failure to correct this initial mistake. Such a failure is of a very different order than the refusal to acknowledge the existence of a request properly made, as in *Woods.* The *Woods* defendants arguably refused to

hear the inmate's request, thereby denying the inmate any process at all; the defendants in this case heard the request and followed through in attempting to locate the witness. The fact that their efforts were misdirected (due in large part to an error they did not commit) does not make the process they followed arbitrary. In short, defendants here did what the prison officials in *Woods* did not do: they "look[ed] at each proposed witness and determine[d] whether or not he should be allowed to testify." *Hayes v. Walker,* 555 F.2d 625, 630 (7th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977), *quoted in Woods,* at 774. The due process clause does not require more.

■ It is of course possible for plaintiff to argue that, even though the process followed in the hearing was adequate, the decision reached was so arbitrary that it denied him due process of law. *See, e.g., Smith v. Rabalais,* 659 F.2d 539, 545 (5th Cir.1981) (courts must consider 'whether any evidence at all' supports hearing committee decision) (quoting *Willis v. Ciccone,* 506 F.2d 1011, 1019 n. 11 (8th Cir.1974)), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982). Plaintiff acknowledges, however, that the hearing committee had before it the statements of guards who claimed to have seen plaintiff participate in a prison riot. In the light of such evidence, and considering the deference which prison officials must be accorded in such matters, *e.g., Clifton v. Robinson,* 500 F.Supp. 30, 33–34 (E.D.Pa.1980), I cannot find a genuine issue of material fact as to the rationality of the result in this matter.

## V. *Claims Concerning Post-Hearing Review Procedures*

Plaintiff claims that defendants failed to provide adequate post-hearing review of plaintiff's disciplinary confinement, as required by Administrative Directive 801. This denial is said to violate the Fourteenth Amendment as well. I have already addressed plaintiff's argument that 801 defines the process due in this matter; that argument has no more merit in this context

than in the other contexts in which plaintiff raises it.

■ Thus, the issue is whether defendants' conduct satisfies the standards set by the Fourteenth Amendment independently of state law. It is clear that the Fourteenth Amendment requires some process of periodic review in cases of *administrative* confinement. *See Hewitt v. Helms,* 103 S.Ct. at 874 n. 9; *Mims v. Shapp,* 744 F.2d 946, at 950–952 (3d Cir.1984). It does not follow, however, that similar procedures are constitutionally required when, as here, an inmate has been confined pursuant to a full disciplinary hearing. The inmates in *Hewitt* and *Mims* were arguably confined without the benefit of the sort of procedures required by *Wolff v. McDonnell. See Hewitt,* 103 S.Ct. at 874 (noting that record did not clearly demonstrate that a *Wolff* hearing was held); *Mims,* at 949 ("no hearing preceded" inmate's assignment to solitary confinement). Subsequent periodic review was thus necessary precisely because no *Wolff*-style hearing was held before, or soon after, confining the inmate. *See Hewitt,* 103 S.Ct. at 874 n. 9; *Mims,* at 951–952. In effect, the review procedures serve to prevent the use of administrative confinement, over which prison officials have such broad discretion in the first instance, as "a pretext for indefinite confinement of the inmate." *Hewitt,* 103 S.Ct. at 874 n. 9.

■ No such danger exists in cases where *Wolff* procedures are followed at or near the beginning of confinement. In such cases, the inmate is assured notice and an opportunity to be heard prior to the carrying out of the sentence of solitary confinement. Moreover, that "sentence" is of some definite duration (here, six months), and is thus altogether different from the open-ended confinement at issue in *Hewitt* and *Mims.* These differences reinforce the conclusion that no constitutional requirement of periodic review exists once the *Wolff* procedures are employed. Certainly *Wolff* itself does not support such a requirement: despite the absence of any administrative review procedure in the challenged state scheme, the Court refrained from requiring any administrative review as a constitutional matter. *See Wolff,* 418 U.S. at 565, 94 S.Ct. at 2979.

■ Even if the due process requirements of *Hewitt* and *Mims* applied in this matter, those requirements were met by defendants. Plaintiff concedes that he received at least three reviews of his confinement status during the roughly four months he was in RHU. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 11–13. *Cf. Hewitt,* 103 S.Ct. at 874 n. 9 (inmate received a single informal review one month after confinement; such review was "sufficient to dispel any notions that the confinement was a pretext"). Plaintiff nevertheless argues that these reviews did not satisfy the dictates of due process, because no review took place for the first seven weeks of his confinement. Nothing in either *Hewitt* or *Mims,* however, suggests that a seven-week delay is constitutionally impermissible. I therefore find that the review procedures satisfied due process.

## VI. *Plaintiff's Motion to Amend the Complaint*

My disposition of defendants' motion for summary judgment largely resolves the issues posed by plaintiff's motion to amend the complaint. In support of his motion to amend, plaintiff argues that Magistrate Hall read the original complaint too narrowly, and consequently plaintiff's due process claims were not adequately addressed in the Magistrate's report. The amended complaint, it is said, sets forth plaintiff's claims with greater clarity, and will thus aid the court's understanding of the issues raised by those claims.

There is nothing in Magistrate Hall's report to suggest that he did not consider the full range of plaintiff's due process claims. Moreover, those same claims have been fully considered and rejected here. Clarification at this point is therefore superfluous.

In addition to restating the original claims, the motion to amend seeks to add both new defendants and new legal theories, based both on the equal protection clause of the Fourteenth Amendment and on state law. The new defendants, like the original defendants, are officials who participated in or had some responsibility for plaintiff's disciplinary confinement. The federal claims against the new defendants are, as a result, essentially no different from those raised against the original defendants. In the course of deciding defendants' motion for summary judgment, I have considered these claims as to the original defendants. It would be futile to permit plaintiff to keep his due process claims alive against a new set of defendants, when the underlying basis for those claims has already been deemed legally insufficient. *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

The federal claims asserted in the proposed amended complaint do differ from those considered in this opinion in one respect: the amended complaint alleges that the facts in this case give rise to a violation of the equal protection clause of the Fourteenth Amendment. The asserted equal protection claim is a novel one, never having been raised before plaintiff's motion to amend.

Plaintiff's equal protection theory is in fact no different from his due process theory. No facts are alleged in the amended complaint which might tend to support a finding of discrimination of some sort; rather, plaintiff continues to allege that he was confined mistakenly and without the benefit of proper procedures. Nowhere does plaintiff allege his treatment was different from that afforded other prisoners similarly situated.

In other words, plaintiff's amended complaint, insofar as it states a federal claim for relief, states a claim based on the due process clause of the Fourteenth Amendment. That claim has now been judged insufficient as a matter of law. It would be senseless to allow plaintiff to restate this same claim under a different label which has no apparent application to the alleged facts. *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.) (leave to amend may be denied when amended complaint would not survive a motion to dismiss), *cert. denied*, —— U.S. ——, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). *See also O'Brien v. DiGrazia*, 544 F.2d 543, 546 & n. 3 (1st Cir.1976) ("when a plaintiff under 42 U.S.C. § 1983 supplies facts to support his claim, [the court is not required] to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional action into a substantial one"), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

The state law claims contained in the proposed amended complaint arise out of the same events as the federal claims discussed in this opinion. Having rejected the federal law claims, I hereby decline to exercise the court's pendent jurisdiction over the state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## VII. *Conclusion*

For the foregoing reasons, plaintiff's motion to amend the complaint is denied, and defendants' motion for summary judgment is granted. An order to that effect accompanies this Opinion.