**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 20, 2018[*]
Decided September 24, 2018

*Before*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1534

| | |
|---|---|
| EDDIE R. HUDSON,<br>    *Petitioner-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Indiana,<br>Indianapolis Division. |
| *v.* | No. 1:17-cv-1821-SEB-MJD |
| STANLEY KNIGHT,<br>Superintendent of Plainfield<br>Correctional Facility,<br>    *Respondent-Appellee*. | Sarah Evans Barker,<br>*Judge*. |

**O R D E R**

Prisoner Eddie Hudson petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 to restore sentencing credits that he lost after the prison said that he possessed a weapon. He argues that prison officials violated his right to due process by not allowing him access to a recording that he says exonerates him and by refusing to watch it themselves. The district court denied the petition. We vacate the judgment because the

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

prison has justified neither its decision to deny Hudson access to the recording nor its refusal to have prison officials view it.

Hudson was charged with possessing a dangerous weapon after officers at Plainfield Correctional Facility found two razor blades attached to a toothbrush handle under his mattress. His bed is in an "open dorm" area that many inmates use. Prison officials told Hudson that he could contest the charge and present evidence at a disciplinary hearing. Hudson maintained that the weapon was not his, and he asked to review the video surveillance recording of his bed area to see who had placed it there. He initially asked to review the 24 hours before the officers discovered the weapon, but he later modified his request to 12 hours' review. (The prison denies receiving the modification but argues that either way it should win on appeal.) In refusing Hudson's request, an officer checked a box on a form stating that "allowing the offender to view video recorded evidence" would "jeopardize the safety and/or security of the facility." An officer reviewed only 11 minutes of the recording—from the time the officers entered Hudson's bed area until they ended the search.

Hudson lost at his disciplinary hearing. After considering the 11-minute recording, Hudson's testimony (asserting his innocence), a photo of the weapon, and staff reports, the hearing officer ruled that Hudson had possessed a dangerous weapon. The officer revoked 125 days of earned sentence credits and demoted him to a classification under which he will earn sentence credits at a reduced rate.

Hudson seeks relief from this ruling. He appealed administratively, but his appeals were denied. He then petitioned for a writ of habeas corpus under § 2254, contending that (1) he was denied due process because the prison denied him access to the part of surveillance recording that preceded the search, and (2) the evidence was insufficient to conclude that he possessed a dangerous weapon. The district court denied the petition, ruling that Hudson received due process and that "some evidence" supported the finding of guilt.

We briefly address and reject Hudson's argument that the evidence in the record was insufficient to find him guilty of possessing a weapon. Hudson observes that the weapon was found in an "open dorm" where other inmates had access to his mattress; thus, he argues, the discovery of the weapon under his mattress did not prove that he had put it there. But the disciplinary board's decision need only be supported by "some evidence" that he possessed it. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011). Our inquiry is confined to whether *any* reliable

evidence supports the hearing officer's conclusions. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). The video recording showing that officers found the weapon under Hudson's mattress satisfies this "meager threshold." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Hudson responds that other evidence in the hearing record could support a contrary finding, but that possibility alone does not negate that "some evidence" supports the finding of guilt.

Although some evidence supports guilt, Hudson still may—and does—contend that the ruling is flawed because he did not receive due process. *See Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). Hudson has a protected liberty interest in his earned sentence credits, so he was entitled to due process before losing them. *See id.; Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). And due process requires that prisoners receive access to exculpatory evidence, including video recordings, "unless its disclosure would unduly threaten institutional concerns." *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (*Piggie I*); *see also Ponte v. Real*, 471 U.S. 491, 498–99 (1985). Prison officials may thus withhold video recordings under a "bona fide security justification." *Jones*, 637 F.3d at 848–49. But "[w]e have never approved of a blanket policy of keeping confidential security camera videotapes for safety reasons." *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) (*Piggie II*). Likewise, a "conclusory" invocation of security is not sufficient. *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir. 1977). Instead, the prison must explain *why* the release of a particular video recording might jeopardize security—such as a statement that the inmate "might learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future." *Piggie II*, 344 F.3d at 679.

The prison has not said why security would be threatened if Hudson saw the surveillance recording. Instead, an officer merely found, by checking a box on a form, that "allowing the offender to view video recorded evidence" would "jeopardize the safety and/or security of the facility." But such "broad unsupported findings" about "security" are not adequate. *Hayes*, 555 F.2d at 630. If the prison may incant "security" without explaining it, an inmate's right to present exculpatory evidence "could be arbitrarily denied in any case and thereby rendered meaningless. This court would be unable to exercise even limited review of such broad findings." *Id.* That is why the prison must explain its rationale for withholding evidence. *See Ponte*, 471 U.S. at 498–99. It need not do so during the administrative process, *see Hayes*, 555 F.2d at 630, but it must do so eventually, *see Ponte*, 471 U.S. at 498-99. Yet the prison has not at any time—during the administrative proceedings, in the district court, or in this court—explained why letting Hudson see the recording might endanger prison security. Nor is any bona

fide security justification evident from the record. Therefore, the unelaborated security rationale fails.

Even if the prison had offered a valid reason for refusing to let Hudson watch the recording, it violated Hudson's due process rights for another reason. The prison officials *themselves* were supposed to review the recording for possibly exculpatory video evidence, as Hudson requested, and they did not. *See Piggie I*, 277 F.3d at 925–26. The prison responds that it reviewed the 11-minute segment showing the search. But that segment is what the prison expected to be *inculpatory.* Hudson believes that another inmate planted the weapon under his mattress before the search, not that the officers found no weapon during the search. To review potentially exculpatory evidence, the prison should have watched a portion of the recording covering a reasonable amount of the time before the search started. (Because the prison did not review *any* of the potentially exculpatory recording, we need not decide what portion would have been reasonable.)

The prison replies unpersuasively that it could not review any more of the video evidence. It argues that it is "unrealistic and impractical" to expect that in all disciplinary cases its staff will "review long periods of irrelevant security video when contraband is found." We see two problems with this argument. First, a video recording is "irrelevant" only if nothing exculpatory is on it. But "the record here does not demonstrate with any degree of certainty that the tape lacked exculpatory value or was otherwise irrelevant." *Piggie II*, 344 F.3d at 679.[1] Second, the prison's argument that it is too costly to review video recordings in "all disciplinary cases" is not sufficient. We consider only the evidence of the burden involved in a particular case; we do not speculate about the "aggregate…costs of compliance" when there is no evidence other inmates are actually making similar requests. *See Schlemm v. Wall*, 784 F.3d 362, 365–66 (7th Cir. 2015). Because the prison has not argued, let alone substantiated, that the burden of reviewing a reasonable portion of the possibly exculpatory recording is unmanageable here, this rationale for refusing to watch the recording is inadequate.

The district court's decision is VACATED, and the case is REMANDED for further proceedings.

---

[1] The prison argues on appeal that it made an in-camera submission to the district court. But the record reflects no such submission, the prison does not state what part of the recording it submitted, and the district court made no findings about it.