742 F.2d 770
 WOODS, Richard,
v.
MARKS, Ronald J., Commissioner of Correction, Deramus,
Erskind, Deputy Commissioner of Corrections, Cuyler, Julius
T., Superintendent, Mauger, Robert N., Deputy Superintendent
of Operations, Reid, Laurence J., Deputy Superintendent,
Treatment; Vaughn, Donald T., Major of the Guards,
Williams, Robert, Lieutenant, Foley, John Doe, Sergeant,
Glaum, Dennis, Corrections Officer I, Zimmerman, Charles H.,
Superintendent, Wicker, Emanuel C., Deputy Superintendent of
Operations, Zumpetta, Anthony W., Deputy Superintendent,
Treatment, Domovich, Andrew, Major of the Guards, Henry,
Terrance W., Classification & Treatment Manager, Dick, J.A.,
Training Coordinator, Myers, Clinton, Captain of Security,
All, in their official and individual capacities as
employees of the Pennsylvania Bureau of Corrections.
Appeal of Richard WOODS.
 No. 83-1871.
 United States Court of Appeals,
Third Circuit.
 Argued July 20, 1984.
Decided Aug. 29, 1984.
 
 Charles Sovel, Daniel J. Boyce (argued), Freedman & Lorry, P.C., Philadelphia, Pa., for appellant.
 Leroy S. Zimmerman, Atty. Gen., David M. Donaldson, Deputy Atty. Gen. (argued), Com. of Pa., Philadelphia, Pa., for appellees.
 Before ADAMS, HIGGINBOTHAM and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Senior Circuit Judge.
 
 
 1
 Plaintiff-appellant, an inmate at the State Correctional Institution at Huntingdon, Pa. ("Huntingdon"), appeals from a November 8, 1983, district court order granting defendants' supplemental motion for summary judgment.[1] Plaintiff's claim was brought under 42 U.S.C. Sec. 1983 and this court has jurisdiction pursuant to 28 U.S.C. Sec. 1291. After careful consideration of the record, we vacate the November 8, 1983, judgment in favor of defendants and remand to the district court for further proceedings consistent with this opinion.[2]
 
 I.
 
 2
 Plaintiff, Richard Woods, initiated this section 1983 action against 16 state prison officials to recover damages for numerous alleged violations of his civil rights. On this record, we consider only plaintiff's claim that defendants violated his right to due process by refusing to permit him to call a witness at his prison disciplinary hearing at Huntingdon.[3] Because we review the district court's dismissal of this claim on a summary judgment motion, we must view the facts of record and the inferences to be drawn from them in the light most favorable to the party opposing the motion. Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 95 (3d Cir.1982) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)). The facts in the instant case are described as follows in the record:
 
 
 3
 On January 24, 1982, a fight broke out between prison guards and inmates of Cellblock C at the State Correctional Institution at Graterford, Pa. ("Graterford").[4] Two days later, prison officials transferred plaintiff and 14 other inmates suspected of participation in the incident to Huntingdon. Among the transferred inmates was William Corley, # F-8015.
 
 
 4
 Huntingdon prison officials scheduled a hearing to consider the evidence implicating plaintiff in the Graterford incident and to determine whether plaintiff should be disciplined for his alleged misconduct. Prior to the hearing, plaintiff submitted a standard form on which he requested the assistance of an inmate to aid in his defense and a witness to testify on his behalf. Plaintiff, however, did not fully complete the witness request form; he listed inmate William Corley's prison number but not his name. On the same form, in the space below the printed words "Witness Permitted?", defendant Clinton Myers, Captain of Security at Huntingdon and chairman of the hearing committee, inexplicably wrote "None Requested."
 
 
 5
 According to his affidavit, plaintiff sought Corley's testimony to establish that plaintiff was talking to Corley at the time of the incident and, therefore could not have been involved in such Graterford incident. Plaintiff alleges that he reiterated his request for a witness at the disciplinary hearing chaired by Captain Myers at Huntingdon on January 28, 1982. According to plaintiff's affidavit, Myers replied that no witnesses were permitted. The record does not show that Myers gave or considered any other reasons for denying plaintiff's requests at the time of the hearing.
 
 
 6
 After conducting the hearing, a three-member disciplinary committee found plaintiff guilty of the misconduct charges and sentenced him to two consecutive six-month terms in disciplinary confinement.[5] Plaintiff was released from disciplinary confinement on November 4, 1982, after serving over nine months.
 
 
 7
 Plaintiff filed his complaint pro se on December 22, 1982, seeking damages under 42 U.S.C. Sec. 1983. Counsel was appointed to represent plaintiff the following month. Defendants moved for summary judgment on March 29, 1983. The district court granted defendants' motion in part on July 1, 1983. The court, however, denied the motion with respect to plaintiff's claim that the denial of his witness request violated his right to due process.[6] In support of this ruling, the district court noted:
 
 
 8
 "Assuming Woods did properly request the assistance of an inmate and a witness, there is also a factual issue as to why these requests were denied.... Defendants have thus far failed to indicate why Woods' request were not honored. Defendants did not, for example, state that affording Woods his chosen witness would threaten prison security and order."
 
 
 9
 (60a).
 
 
 10
 In response to the district court's ruling, defendants made a supplemental motion for summary judgment. Attached to the motion was Captain Myers' affidavit, stating in pertinent part:
 
 
 11
 "7. Under 'Name of Witness' [on the witness request form] is written 'F-8015,' which is shown by the attached memorandum and list of SCIG [Graterford] inmates transferred due to the January, 1982 state of emergency, is the inmate number for William Corley, one of the inmates transferred to SCIH [Huntingdon] due to his suspected involvement in the inmates' assault on Correctional Officers which led to the declaration of a state of emergency at SCIG [Graterford].
 
 
 12
 "8. I would not have permitted Mr. Corley, or any of the SCIG [Graterford] inmates transferred to SCIH [Huntingdon] due to their suspected involvement in the SCIG [Graterford] state of emergency, to testify as a witness for plaintiff, Richard Woods, because the serious possibility of security problems and of a threat to prison order would outweigh any possible value of Mr. Corley as a witness."
 
 
 13
 (69a).
 
 
 14
 After considering the supplemental motion for summary judgment and the attached affidavit, the district court granted defendants' motion on November 8, 1983. The court reasoned:
 
 
 15
 "With respect to the requested witness, William Corley, defendants now argue that his presence at the hearing would have posed a safety threat. Corley was one of the other prisoners allegedly involved in the Graterford disturbance which was the subject of Woods' disciplinary hearing. Under Wolff [v. McDonnell, 418 U.S. 539 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974) ], the denial of a witness for safety reasons is permissible and summary judgment shall be granted on this issue."
 
 
 16
 (78a).
 
 II.
 
 17
 On appeal, plaintiff argues that the district court erred in granting summary judgment to defendants based on Captain Myers' affidavit, which states that plaintiff's proposed witness would not have been permitted for security reasons. We agree. Captain Myers' affidavit does not resolve the issue of material fact raised by the pleadings and supporting affidavits: whether Myers arbitrarily denied plaintiff's witness request or denied the request for the wrong reasons.
 
 
 18
 Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), sets forth the due process requirements for prison disciplinary hearings. In Wolff, the Supreme Court held, inter alia, that an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566, 94 S.Ct. at 2979. Noting that "the unrestricted right to call witnesses from the prison population carries obvious potential for disruption ...," the Court indicated that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority...." Id. "Within the reasonable limitations necessary in the prison disciplinary context, [the Court in Wolff ] suggested, but did not require, that the disciplinary committee 'state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in the individual cases.' " Baxter v. Palmigiano, 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976) (quoting Wolff, 418 U.S. at 566, 94 S.Ct. at 2979).
 
 
 19
 The right to call a witness is, therefore, a "limited right," Baxter, 425 U.S. at 321, 96 S.Ct. at 1559. The right is limited by the broad discretion of prison officials to refuse witness requests that conflict with the need to maintain order in the institution. In recognition of the difficult tasks faced by prison administrators, the Court in Wolff warned that courts "should not be too ready to exercise oversight and put aside the judgment of prison administrators." Wolff, 418 U.S. at 566, 94 S.Ct. at 2979.[7]
 
 
 20
 The policy of deference to the judgment of prison officials does not require, however, that a reviewing court defer to the arbitrary denial of an inmate's limited right to call witnesses. Instead, as the Court stated in Wolff, "[t]he touchstone of due process is the protection of the individual against arbitrary action of government." Wolff, 418 U.S. at 558, 94 S.Ct. at 2976. Again, in Baxter, the Court implied that even in areas "left to the sound discretion of prison officials," judicial review is appropriate to ensure that no abuse of discretion has occurred. Baxter, 425 U.S. at 322-23, 96 S.Ct. at 1559-60.
 
 
 21
 Although the Third Circuit has never squarely addressed the issue, other Circuit Courts of Appeals that have interpreted Wolff have recognized that the broad discretion of prison officials is not unbounded. Hayes v. Walker, 555 F.2d 625 (7th Cir.), cert. denied, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (Hayes I); Cardarpoli v. Norton, 523 F.2d 990, 998 (2d Cir.1975). In Hayes I, the Seventh Circuit held that courts should engage in limited review of the exercise of prison officials' judgment to ensure that arbitrary decision-making is not undertaken. The court remanded the case to the district court to determine whether the record indicated an abuse of discretion by the Institutional Adjustment Committee in refusing to call any of plaintiff's proposed witnesses. Id. On remand, the district court relied, in part, on the testimony of the warden and the members of that Committee. Their testimony, given subsequent to their denial of plaintiff's witness request, articulated the basis for reaching their earlier decision at the time of the hearing. Hayes v. Thompson, 637 F.2d 483, 488 (7th Cir.1980) (Hayes II). The Seventh Circuit, however, determined that "subsequent testimony may not be considered in reviewing the Committee's decision." Id. The court characterized the testimony as "post-hoc rationalizations" and stated that "[s]uch post-hoc rationalizations are to be viewed with suspicion, and are not a meaningful basis for judicial review." Id.
 
 
 22
 We are persuaded that the Supreme Court in Wolff did not intend to limit judicial review of prison officials' exercise of discretion to the extent that a prisoner's limited right to call witnesses could be arbitrarily denied in any case and thereby be rendered meaningless. On the contrary, Wolff contemplated a balancing of "the inmate's interest in avoiding [disciplinary sanctions] against the needs of the prison...." Wolff, 418 U.S. at 566, 94 S.Ct. at 2980. Before prison officials can engage in the requisite balancing analysis, they should, at the very least, "look at each proposed witness and determine whether or not he should be allowed to testify." Hayes I, 555 F.2d at 630.
 
 III.
 
 23
 Having determined that Wolff permits limited judicial review of prison officials' exercise of discretion at disciplinary hearings, we turn to the district court's grant of summary judgment in the instant case. Fed.R.Civ.P. 56(c) provides that a trial court may enter summary judgment "if the pleadings ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties. Ness v. Marshall, 660 F.2d 517, 519 (3d Cir.1981) (quoting Tomalewski v. State Farm Life Insurance Co., 494 F.2d 882, 884 (3d Cir.1974)).
 
 
 24
 Plaintiff contends that an issue of material fact exists regarding the basis for Captain Myers' refusal to call plaintiff's proposed witness at the January 26, 1983, disciplinary hearing. We agree. First, it is unclear whether plaintiff properly requested a witness when he partially completed the witness request form. Second, the record offers no explanation for Captain Myers' notation on the same form that no witness was requested. Assuming that plaintiff adequately informed the disciplinary committee of his desire to call a witness, the denial of this request simply because "[n]one [was] requested" might not be a permissible exercise of discretion. Instead, it might be an example of the kind of arbitrary decision-making that violates an inmate's limited due process right to call witnesses at prison disciplinary hearings.
 
 
 25
 Plaintiff's affidavit also alleged that he orally requested a witness at his disciplinary hearing and that Captain Myers summarily replied that no witnesses were permitted. Standing alone, this allegation would not support a due process claim under Wolff v. McDonnell. The Supreme Court in Wolff specifically declined to require prison disciplinary committees to state reasons for refusing to call witnesses, and we do not impose a more demanding rule by our holding in the instant case. See also Hurney v. Carver, 602 F.2d 993, 995 (1st Cir.1979) ("disciplinary board need not state its reasons for 'refusing to call a witness' ", citing Wolff ).
 
 
 26
 Ordinarily, we presume that prison officials refuse to call witnesses for legitimate reasons consistent with the due process requirements for disciplinary hearings established in Wolff. Hurney v. Carver, 602 F.2d at 995. In this case, however, the committee articulated a reason[8] that gives rise to a disputed issue of material fact. When a disciplinary committee states a reason, in the first instance, that appears contrary to fact, the inference that arbitrary decision-making may have occurred seems unavoidable. Plaintiff's claim in the instant case, therefore, stands on firmer ground than claims that allege that prison officials refused to call a requested witness and expressed no reasons for doing so. See Thomas v. Estelle, 603 F.2d 488 (5th Cir.1979); Hurney, 602 F.2d at 995.
 
 IV.
 
 27
 Defendants contend that the factual issues cited in part III of this opinion are immaterial and cannot preclude summary judgment. Defendants rely on Captain Myers' affidavit, filed with the supplemental summary judgment motion, which states that he would not have permitted plaintiff's proposed witness, William Corley, to testify because "the serious possibility of security problems and of a threat to prison order would outweigh any possible value of Mr. Corley as a witness" (69a).
 
 
 28
 This affidavit does not dispell the possibility that the disciplinary committee at Huntingdon may have arbitrarily denied plaintiff's witness request. Moreover, Myers' affidavit does not cure the otherwise defective procedure. Hayes II, 637 F.2d at 488. Although the administrative record of the disciplinary proceedings at Huntingdon shows that plaintiff's proposed witness, Corley, was suspected of participation in the Graterford incident, the record does not show that Captain Myers considered this before refusing to permit Corley to testify on plaintiff's behalf. Defendants seem to concede in their brief that Myers was unaware of the identity of plaintiff's proposed witness at the time of the hearing.[9] The wording of Myers' affidavit[10] and defendants' apparent concessions tend to show that Myers was unaware of the identity of plaintiff's proposed witness when he refused to call the witness at the disciplinary hearing. Consequently, we find that a question concerning a material issue of fact is unresolved.
 
 
 29
 Accordingly, we vacate the district court order of November 8, 1983, and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 On July 1, 1983, the district court granted in part and denied in part defendants' initial March 29, 1983, motion for summary judgment. On August 23, 1983, defendants filed their supplemental motion for summary judgment
 
 
 [2]
 The district court record displays that court's very creditable, thorough consideration of the record and our remand is required solely due to our concern arising from review of an extensive record containing some confusing material
 
 
 [3]
 Only one other issue survived the district court's initial July 1, 1983, order granting summary judgment. This was plaintiff's claim that defendants improperly denied his request for an inmate to assist in his defense. Although the district court granted summary judgment to defendants on this issue in its November 8, 1983, order, plaintiff does not raise the issue in his brief. We, therefore, do not consider it in this appeal
 
 
 [4]
 Plaintiff's alleged participation in the fight was testified to by a guard at Graterford. The guard stated:
 "I saw about thirty inmates circled around and a fight about to ensue.... I saw F7027 Richard Woods throw six punches to the face of Officer E. Moskal and Officer Moskal went down.... Woods then kicked Officer Moskal in the face, head and back about ten times as he was trying to cover his face with his arms. I ordered F7027 to stop but to no avail."
 See Exhibit C to Defendants' Motion for Summary Judgment filed March 29, 1983. A misconduct report submitted by another guard alleged that, two hours after the initial fight, plaintiff knocked the uniform hat off the head of a state trooper and pushed the state trooper off the bottom step of a flight of stairs.
 
 
 [5]
 We note that in a separate criminal proceeding commenced in August 1982, the Commonwealth prosecuted plaintiff for his alleged participation in the Graterford incident. The jury, however, acquitted plaintiff in that proceeding of the three criminal assault charges arising from the incident
 
 
 [6]
 We assume that the district court, by its July 1, 1983, order, intended to grant summary judgment with respect to all defendants who did not personally participate in the disciplinary hearing held January 28, 1982, at Huntingdon. In section 1983 suits, respondeat superior is not applicable in its traditional sense because the defendant officials are not employers. Both subordinates and officials are employees of the government unit. Goode v. Rizzo, 506 F.2d 542, 550 (3d Cir.1974), rev'd on other grounds, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Curtis v. Everette, 489 F.2d 516, 521-22 (3d Cir.1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974)
 
 
 [7]
 The Supreme Court reiterated this principle in Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983):
 " 'Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' "
 Id. at 472, 103 S.Ct. at 872 (quoting Bell v. Wolfish, 441 U.S. 520, 527, 99 S.Ct. 1861, 1868, 60 L.Ed.2d 447 (1979)). Cf. Hudson v. Palmer, --- U.S. ----, ---- - ----, 104 S.Ct. 3194, 3197-3205, 82 L.Ed.2d 393 (1984); Block v. Rutherford, --- U.S. ----, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984).
 
 
 [8]
 Furthermore, remand of this case to the district court will give that court the opportunity to make clear what was contemplated by, and what were the reasons for, the "None Requested" entries on exhibits D and E to the Motion for Summary Judgment, filed March 29, 1983 (Document 10 in district court file), in the space for commenting on whether witnesses were permitted at the disciplinary hearing
 
 
 [9]
 In their brief, defendants stated that, "once the Chair of the hearing committee was made aware of the identity of the witness, another inmate who participated in the inmate uprising .... the Chair stated that he would not have permitted that inmate as a witness due to the serious possibility of security problems." Defendants' brief at 5, n. 2
 
 
 [10]
 Defendant Myers' affidavit poses a hypothetical: "[If I had considered the matter at the time] I would not have permitted Mr. Corley to testify ..." (emphasis supplied). This statement of Myers, the Chair of the hearing committee, was made in his affidavit of July 25, 1983, one and one-half years after the decision not to call plaintiff's witness was made