Paul B. OWENS, Plaintiff,

v.

L.L. LIBHART, Hearing Examiner; David S. Owens, Jr., Commissioner, Defendants.

Civ. No. 89–0846.

United States District Court, M.D. Pennsylvania.

Jan. 26, 1990.

Paul B. Owens, Cresson, Pa., pro se.

Francis R. Filipi, Harrisburg, Pa., for defendants L.L. Libhart, and David S. Owens, Jr.

## MEMORANDUM

NEALON, District Judge.

Plaintiff, a state prisoner, instituted this suit under 42 U.S.C. § 1983. His action revolved around a due process claim that his rights were abridged when the defendants refused his request to call the examining nurse as a witness at his disciplinary hearing. He relied on three contentions: (1) Administrative Directive 801(II)(D)(3) afforded plaintiff the right "to confront and cross examine (sic) *any* witness at a prison disciplinary hearing," document 39 of record (emphasis in original); (2) Defendant Libhart refused to call Nurse Lippincott as a witness, without first determining whether it would be unduly hazardous to institutional safety, thereby violating the Supreme Court's holding in *Wolff, see* doc-

uments 28, 30 of record; and, (3) Administrative Directive 801(V)(E)(2) permitted him to call Nurse Lippincott as an adverse witness, document 38 of record.

Magistrate J. Andrew Smyser filed a Report in this case on October 27, 1989 which recommends that plaintiff's motion for summary judgment be denied and that defendants' motion for summary judgment be granted. Document 27 of record. The Magistrate principally relied upon the Supreme Court's decisions in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in finding that neither the United States Constitution nor the Administrative Directive afforded the plaintiff a right to call any adverse witness at his prison disciplinary hearing. After carefully and independently reviewing the record, this court agrees. However, the court will resolve the contentions made by plaintiff in his subsequent Objections filed on November 6, 13 and December 22, 1989. *See* documents 28, 30, 32, 38, 39 of record.[1]

A. *Application of Administrative Directive 801(II)(D)(3)*

■ Plaintiff has asserted that Administrative Directive 801(II)(D)(3) afforded plaintiff the right to confront and cross-examine any witnesses at a prison disciplinary hearing. Document 39 of record at 1. The court disagrees with such an assertion. Directive 801(II)(D)(3) stated in pertinent part:

"The duties of the Hearing Committee Coordinator shall include, but not be limited to:

. . . . .

(3) Extent of direct or cross-examination of any witnesses . . . ."

Plaintiff misconstrued the directive when he argued that 801(II)(D)(3) provided him a right to confront and cross-examine witnesses. It did not create a substantive right for plaintiff, but merely delineated

---

1. The underlying facts of this case are adequately illustrated in the Magistrate's Report and will be referred to as required.

the duties of the Hearing Committee Coordinator.[2] The provision authorized the Hearing Examiner to determine the extent of direct or cross-examination, but it did not extend his rights beyond the minimum requirements found in the Constitution.

In *Hewitt,* 459 U.S. 460, 103 S.Ct. 864, the Supreme Court held that a Pennsylvania regulation and an administrative directive conferred a protected liberty interest upon state prisoners remaining in the general population. The Court concluded that "a state may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures." 459 U.S. at 469, 103 S.Ct. at 870. An administrative directive may transcend a mere procedural guideline if it uses "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed and that [confrontation or cross-examination] will [ ] occur absent specified substantive predicates," *id.* at 471–72, 103 S.Ct. at 871–72—e.g., "The Hearing Examiner shall allow the inmate an opportunity to confront and cross-examine all witnesses, unless it is hazardous to institutional safety." While Directive 801(II)(D)(3) does state that the Hearing Examiner's duties "shall" include "extent of direct or cross-examination of any witness," it lacks any specified substantive predicate. A state regulation creates a substantive right when it limits the discretion of its decisionmaker on the basis of "particularized standards" or "defined criteria," rather than no reason at all. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); *Stephany v. Wagner,* 835 F.2d 497, 500 (3d Cir.1987) *cert. denied,* 487 U.S. 1207, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988); *Williams v. Kyler,* 680 F.Supp. 172, 173 (M.D.Pa.1986), *aff'd,* 845 F.2d 1019 (3d Cir. 1988). In this provision, no standards exist which places substantive limitations on the Hearing Examiner's discretion. Consequently, it does not afford the accused inmate an expanded right to confront and cross-examine witnesses.

### B. *Application of Wolff v. McDonnell*

■ Plaintiff also contended that the Hearing Examiner failed to make a determination that calling Nurse Lippincott would be unduly hazardous to institutional safety as required by the holding in *Wolff,* 418 U.S. 539, 94 S.Ct. 2963. In support of his contention, he cited *Brooks v. Andolina,* 826 F.2d 1266 (3d Cir.1987); *Grandison v. Cuyler,* 774 F.2d 598 (3d Cir.1985); *Woods v. Marks,* 742 F.2d 770 (3d Cir. 1984).[3] All the cases cited, however, are distinguishable from the one at bar. Each involved an inmate who was prohibited from calling *any* witnesses due to his failure to comply with the technical witness request procedures. *See Brooks,* 826 F.2d at 1267; *Grandison,* 774 F.2d at 600; *Woods* 742 F.2d at 772. Moreover, *Grandison* and *Woods* involved supporting inmate-witnesses who would have affirmatively testified in favor of the accused inmate, rather than an adverse witness who was a prison staff member.[4] *See Grandison,* 774 F.2d at 601; *Woods,* 742 F.2d at 772. Indeed, in this suit, Nurse Lippincott's testimony would not have contained direct supporting evidence. Instead, plaintiff intended to call her in an attempt to impeach her written report regarding her medical examination of him. Plaintiff expressed such intentions when he stated that: "Nurse Lippincott gave very prejudicial information to the misconduct reporting staff member," document 1 of record, ¶ 7; "It was necessary for me to have nurse (sic) Lippincott called as a witness since her testimony could have been impeached ...," document 15 of record, Plain-

---

2. The Hearing Examiner who presided at the disciplinary hearing assumed the duties of the Hearing Committee Coordinator under Administrative Directive 801(II)(D) & (E). *See* document 18 of record.

3. Plaintiff also cited *Drayton v. Robinson,* 719 F.2d 1214 (3d Cir.1983). However, the issue in

*Drayton* does not involve an inmate's right to call a witness, consequently, it is not relevant to the analysis in the case at hand.

4. The Court in *Brooks* does not indicate who the witnesses were and whether they were expected to testify in favor of the accused inmate.

tiff's Affidavit, ¶ 7; and, "Plaintiff certainly needed Nurse Lippincott to be called so that plaintiff could have the opportunity to refute the mis-conduct (sic) report," document 1 of record, ¶ 8. *See* also document 1 of record, Exhibit 1.

The court will now direct its attention to the application of *Wolff.* In that case, the Supreme Court stated that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979. However, the determination of whether calling a witness would be "unduly hazardous" is implicated only when he/she will testify "in his defense," (i.e. produce affirmatively supportive evidence) and not to confront or impeach that witness. The Court stated that:

> Confrontation and cross-examination present greater hazards to institutional interests. . . . [I]t does not appear that confrontation and cross-examination are generally required in this context. We think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decisions in prison disciplinary cases can be arrived at without cross-examination.

*Id.* at 567–68, 94 S.Ct. at 2980–81. The Court further noted:

> We recognize that problems of potential disruption may differ depending on whom the inmate proposes to cross-examine. . . . Although the dangers posed by cross-examination of known inmate accusers, or guards, may be less, the resentment which may persist after confrontation may still be substantial. Also, even where the accuser or adverse witness is known, the disclosure of third

parties may pose a problem. . . . Further, in the last analysis, even within the narrow range of cases where interest balancing may well dictate cross-examination, courts will be faced with the assessment of prison officials as to the dangers involved, and there would be a limited basis for upsetting such judgments. The better course at this time, in a period where prison practices are diverse and somewhat experimental, is to leave these matters to the sound discretion of the officials of state prisons.

*Id.* at 568–69, 94 S.Ct. at 2980–81.[5]

In *Wolff,* the Court essentially distinguished between those who are affirmatively favorable witnesses for the accused inmate and those who are adverse. Regarding the favorable witness, the Hearing Examiner would be required to make a finding that permitting the witness to testify would be "unduly hazardous to institutional safety" prior to refusing the inmates' request. *Id.* at 566, 94 S.Ct. at 2979. However, regarding the adverse witnesses, who will only be examined through confrontation, impeachment, and cross-examination, no such finding is required. The rationale for such a distinction relies on the concern that if confrontation and cross-examination were allowed as a matter of course, "there would be considerable potential for havoc inside the prison walls, and proceedings would inevitably be longer and tend to unmanageability." *Id.* at 567, 94 S.Ct. at 2980. Furthermore, from the facts presently before the court, it is not difficult to imagine that a nurse, who is called as a witness in several disciplinary hearings and confronted and potentially intimidated by the inmate, would be inhibited from making objective medical analyses in subsequent hearings and medical reports.[6]

---

5. To this date, the Supreme Court has not found the circumstances in prisons to have changed enough to warrant a requirement that the Hearing Examiner conduct an "unduly hazardous" examination for each witness, including those who are adverse. Indeed, in light of the contemporary problems prison officials face today, the courts remain reluctant to interfere with their sound discretion regarding prison administration. Cf. *Hewitt,* 459 U.S. at 472, 103 S.Ct.

at 871; *Plyler v. Evatt,* 846 F.2d 208, 212 (4th Cir.1988); *Duran v. Elrod,* 760 F.2d 756, 759 (7th Cir.1985).

6. Such medical analyses is also essential to the orderly administration of the prison, especially when it is required to objectively determine whether an inmate is actually ill or feigning to obtain a transfer or short respite in the infirmary away from the rest of the prison.

**C.** *Application of Administrative Directive 801(V)(E)(2)*

Plaintiff argued in the alternative, that *Wolff* did not apply because Pennsylvania chose to expand inmates' rights beyond the minimum requirements found in the Constitution, through Administrative Directive 801(V)(E)(2). *See* document 38 of record. The Magistrate thoroughly analyzed this issue and the court fully adopts his legal analysis and conclusion. *See* document 27 of record at 9–12.

Thus, supported by the analysis set forth above, and the Report of Magistrate J. Andrew Smyser, the court will grant defendants' motion for summary judgment.[7]

Finally, plaintiff made a motion for Clerk of Court to send him a copy of the docket entries in this case. The court will hereby grant this motion.

### ORDER

NOW, this 26th day of January, 1990, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) The Report of Magistrate J. Andrew Smyser is adopted with the additions set forth in the accompanying Memorandum.

(2) Plaintiff's motion for summary judgment is denied.

(3) Defendants' motion for summary judgment is granted.

(4) Summary judgment is granted in favor of defendants and against plaintiff.

(5) Defendant–Owen's motion to dismiss is denied as moot.

(6) Plaintiff's motion to present oral argument is denied.

(7) Plaintiff's motion to direct Clerk of Court to send him a copy of the docket entries of this case is granted. Clerk of Court is hereby directed to send such copy.

(8) Any appeal from this Order will be deemed frivolous, lacking in probable cause and not in good faith.

(9) The Clerk of Court is directed to close this case.

---

**7.** Plaintiff submitted an equal protection argument, which the court finds to be without merit. Also, plaintiff submitted a motion to present oral argument, which the court will deny.