

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2009

# Dennis McKeithan v. Gary Abrams

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1746

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Dennis McKeithan v. Gary Abrams" (2009). *2009 Decisions.* Paper 1581.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1581

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 08-1746
_____

DENNIS MCKEITHAN,
                                        Appellant
                        v.

JEFFREY BEARD, Secretary of Corrections; JOHN SCHAFFER, Chief Deputy
Secretary of Corrections; LANCE COUTERIER, Chief Psychological Services; MR.
STICKMAN, Deputy Secretary of Western District; SHARON BURKE, Chief Secretary
Office of Grievance & Appeals; MR. WYNDER, Superintendent at SCI Dallas; LORI
LYONS, Counselor at SCI Dallas; CHRIS PUTNAM, Unit Manager at SCI Dallas;
CHARLES ERICKSON, Superintendent at SCI Retreat; J. WRIGHT, Psychologist at SCI
Retreat; J. WILSON, Superintendent at SCI Fayette; CAROL SCIRE, Assistant to
Superintendent at SCI Fayette; M. Zaken, Unit Manager at SCI Fayette; G. GALLUCCI,
Chief Psychologist at SCI Fayette; COI GALICKI, Guard at SCI Retreat; COI
WECHOWSKI, Guard at SCI Retreat; COI VAN FOSSEN, Guard at SCI Dallas; MR.
MCKEOWN, Hearing Examiner; SGT. LAYOU, Guard at SCI Retreat, Property
Sergeant; SGT. YARCGWER, Physician Asst. SCI Fayette; MR. MATALONI, CHCA
SCI Retreat; C. MYERS, Physician Asst. SCI Fayette; MR. TETINIK, CHCA SCI
Fayette; MR. G. ABRAMS, Counselor at SCI Fayette; DR. HERBICK, Medical Doctor
SCI Fayette

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 06-0965 )
District Judge:  Honorable Gary L. Lancaster

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 26, 2009

Before: SLOVITER, AMBRO and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 6, 2009)

_____

OPINION

_____

PER CURIAM

Dennis McKeithan, a prisoner at SCI Coal Township,[1] appeals from orders of the District Court granting certain defendants' motion to dismiss and summary judgment to the remaining defendants. McKeithan filed the underlying § 1983 action asserting that prison officials and prison medical staff had violated his constitutional rights under the First, Eighth and Fourteenth Amendments.

McKeithan sued over twenty employees of the Department of Corrections ("DOC defendants") and three medical personnel, not employed by DOC ("medical defendants"). The medical defendants, including two physicians assistants, Chris Meyer and L. Yarcgwer, as well as one physician, Dr. Herbik, moved to dismiss the complaint. The District Court granted the motion as to Meyer and Yarcgwer. Following discovery, the Magistrate Judge recommended granting summary judgment in favor of all remaining defendants and denying summary judgment to McKeithan. The District Court adopted these R&Rs, granted summary judgment to the defendants and denied McKeithan's motion. McKeithan timely appealed.[2]

_____

[1] At the time he filed suit, McKeithan was incarcerated at SCI Fayette.

[2] We have jurisdiction under 28 U.S.C. § 1291. We review orders granting a motion to dismiss or summary judgment de novo. Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008); MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 209 (3d Cir.

2

A.     Motion to Dismiss

McKeithan alleged that Meyers and Yarcgwer denied him previously-prescribed treatment for his dry skin, gas and hemorrhoids without a doctor's approval and in violation of the Eighth Amendment. To state a claim under the Eighth Amendment, McKeithan was required to allege that defendants were deliberately indifferent to his serious medical condition. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The District Court determined that "dry skin" and gas were not serious medical conditions, such that McKeithan had failed to state a claim. Although mere "dry skin" may fall short of a serious medical condition, McKeithan states in his response to defendants' motion to dismiss that his skin was so cracked and dry from his condition that it bled and left stains on his shirt. Had McKeithan been given an opportunity to amend his complaint to include these facts, he might have successfully alleged a serious medical condition.[3] For

2005). When considering a district court's grant of a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Summary judgment is proper only if it appears "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party demonstrates the absence of a genuine material factual dispute, to survive summary judgment the non-moving party must proffer "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

[3]We will affirm the District Court's dismissal of McKeithan's claims regarding treatment for gas, which we do not believe is a serious medical condition under the Eighth Amendment. On appeal, McKeithan suggests that he mischaracterized his condition as "gas," when it was actually "gastritis," or inflammation of the stomach. However, McKeithan offered a fuller description of his condition for the first time on appeal. Notably, in his response to the medical defendants' motion to dismiss, McKeithan does

this reason, we will vacate the dismissal of McKeithan's claims that Meyers and Yarcgwer unconstitutionally denied him medical treatment for eczema.

McKeithan also alleged that Meyers and Yarcgwer violated due process by charging him co-payments for medications for his dry skin and gas, despite prison regulations prohibiting personnel from charging co-payments for medicines to treat pre-existing or chronic conditions. To state a claim for due process, an inmate must allege "(1) that the state deprived him of a protected interest in life, liberty, or property and (2) the deprivation occurred without due process of law." Burns v. Pa. Dep't of Corr., 544 F.3d 279, 285 (3d Cir. 2008). A prisoner has a protected property interest in the funds in his prison account, as well as the right to security in that account. Id. at 291. Therefore, McKeithan has properly alleged the first prong of the due process test, and the only question is whether the deduction of co-payments occurred without adequate procedural safeguards. Because the District Court analyzed McKeithan's claim under the Eighth Amendment instead of due process, we will vacate and remand for consideration of how much process is due prior to the deduction of co-payments in apparent violation of DOC

---

not use the term "gastritis." Instead, he repeatedly refers to his condition as "gas" and even mentions his use of the antacid known as "Tums." Although McKeithan labels his condition as "gastritis" in his objections to the Magistrate Judge's R&R recommending dismissal of this claim, he offers no description of the condition and no argument as to why dismissal on this particular claim was improper. Instead, his objections focus almost exclusively on his eczema and angina. (See Dkt. # 76, Pl's Objections to Part of R&R.)

4

regulations.[4]

      B.     Summary Judgment

McKeithan also appeals from the District Court's decision to grant summary judgment to all defendants and to deny summary judgment to McKeithan. He primarily challenges his placement in the LTSU at SCI Fayette as a violation of due process. He asserts that officials falsified evidence to justify his placement in the LTSU in retaliation for his prior grievances. Routine transfers to administrative segregation do not impinge on liberty interests protected by the Due Process Clause unless the conditions in administrative segregation present an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Even where the conditions of confinement present an atypical and significant hardship, triggering the right to due process, placement in administrative segregation comports with due process so long as prison officials afford a prisoner sufficient procedural protections. See Wilkinson v. Austin, 545 U.S. 209, 225 (2005).

Due process does not require prior notice of a transfer where the post-transfer periodic review of an inmate's placement in segregation provides the inmate with a meaningful opportunity to challenge the grounds of his continued segregation. Shoats v.

---

[4]Our case law establishing that the policy of charging prisoners fees for medical services does not violate the Eighth Amendment per se is inapposite because McKeithan asserts that the co-payments violate due process, not the Eighth Amendment. See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 418-19 (3d Cir. 2000).

Horn, 213 F.3d 140, 145 (3d Cir. 2000); cf. Wilkinson, 545 U.S. at 217 (pre-transfer notice of reasons for proposed transfer to "supermax" facility satisfied Due Process); cf. Hewitt v. Helms, 459 U.S. 460, 476 n.8 (1983) (hearing on transfer to administrative segregation must occur "within a reasonable time *following* an inmate's transfer, taking into account the relatively insubstantial private interest at stake and the traditionally broad discretion of prison officials.") (emphasis added). Even assuming that the LTSU presents a significant and atypical hardship triggering the right to due process, McKeithan's due process claim fails because the record indicates that McKeithan received periodic reviews while in the LTSU. (DOC Deft.'s Mot. Summ. J., Ex. 10 (LTSU 30-day reviews) & Ex. 11).[5]

McKeithan also asserts that prison officials violated due process by allegedly falsifying his disciplinary record. Due process requires only that a prisoner have an opportunity to rebut the allegedly false accusations and evidence. Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."); Lagerstrom v. Kingston, 463 F.3d 621, 624-25 (7th Cir. 2006) (falsified evidence alone not a violation of due process so long as "basic procedures" were followed).[6] In light of the extensive process afforded to McKeithan

---

[5]McKeithan alleges but does not proffer evidence that these hearings were a sham.

[6]We reject McKeithan's assertion that his placement in the LTSU violated the Equal Protection Clause. To assert a claim for a violation of equal protection, McKeithan must

after his transfer, which offered him ample opportunity to raise his concerns regarding his disciplinary history, summary judgment was proper as to this claim.

McKeithan also asserts a retaliation claim in connection with his placement in the LTSU. A prison official's act of filing false misconduct reports in retaliation for First Amendment protected activity may violate an inmate's right of access to the courts. See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). To prevail on a claim for retaliation by prison officials, a plaintiff must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered some "adverse action" by prison officials; and (3) his exercise of a constitutional right was a substantial or motivating factor in the adverse action. Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001). "[P]rison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

Defendants have proffered significant evidence that placing McKeithan in the LTSU advances a legitimate penological interest, namely, containing McKeithan's persistent misconduct and criminal activity within the prison. (See DOC Deft.'s Mot. Summ. J., Ex. 5 (psychological assessment), Ex. 6 (memo from Wynder and Lyons); Ex.

---

show that he is a member of a protected class, such as a racial or religious group. Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002). McKeithan does not assert that defendants discriminated against him on the basis of any protected class, and his equal protection claim fails.

7

8 (misconduct report describing McKeithan's assault on a correctional officer)).

Therefore, McKeithan's retaliation claim fails.

McKeithan asserts that prison officials violated due process by transferring him out of the LTSU and into the Special Management Unit, or SMU, instead of into the general population, without notice or an opportunity to contest the reasons for the transfer. (See Suppl. Compl., ¶ 15.) He also contends that defendants assigned him to the SMU in retaliation for filing a complaint regarding his placement in the LTSU. Defendants asserted in the District Court that McKeithan failed to exhaust this grievance, #170024, by failing to appeal. A prisoner must complete the administrative review process available at the prison level to satisfy the exhaustion requirement of the PLRA. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007). The record indicates that McKeithan did not appeal grievance # 170024 to Final Review. (DOC Deft.'s Mot. Summ. J., Ex. 1, ¶ 7 (decl. of Kristen Reisinger, Asst. Chief Grievance Coordinator)). As McKeithan failed to complete the administrative review process provided by the prison, his SMU claim fails, and the District Court correctly granted summary judgment on this claim, albeit on a different basis.[7]

McKeithan next asserts that prison officials deprived him of his right to call

---

[7]For the same reason, McKeithan's motion for summary judgment on this claim was properly denied. McKeithan asserts that the District Court granted summary judgment on this claim "sua sponte," but the record reflects that defendants requested summary judgment on this claim. (See DOC Deft's Mot. Summ. J. at 16 n.10.)

witnesses and present evidence at his disciplinary hearings, in violation of due process. McKeithan alleges that in one instance, defendant Van Fossen conducted a cell search and accused McKeithan of carrying a wood shank in one of his boots. McKeithan contends that Van Fossen tugged at the sole of his boots in order to plant a weapon there after the cell search, and that a videotape of the search itself would reveal no shank. McKeithan sent his attorney an identical boot, and his attorney created a videotape of himself opening the sole of the boot and digging a wooden shank from deep inside the heel, suggesting that the shank was part of the boot's structure, not a weapon. (Pl.'s Opp'n to Deft's Mot. Summ. J., Ex. 28.) McKeithan contends that defendant McKweon violated due process when she failed to view the videotape of the cell search or his attorney's videotape in the course of adjudicating this misconduct charge. He also contends that McKweon denied him the opportunity to call witnesses in his defense.

A prisoner has a right to call witnesses and present evidence at disciplinary hearings limited by the "broad discretion of prison officials to refuse witness requests that conflict with the need to maintain order in the institution." Woods v. Marks, 742 F.2d 770, 773 (3d Cir. 1984). Due process, however, may require prison officials to consider existing documentary evidence relevant to a charge against a prisoner. Young v. Kann, 926 F.2d 1396, 1400 (3d Cir. 1991). In Young, the prisoner had been accused of sending a threatening letter to an officer. Although the letter itself was available, the hearing officer instead relied on the oral summary of the letter's contents provided by another

9

correctional officer.  In such a situation, the Court held, due process requires the prison official to rely on the document itself, unless safety or institutional order require otherwise.  Id.

In the case at bar, prison officials explained that, although the cell search may have been videotaped, the moment at which Van Fossen found the shank – after the search – had not.  Therefore, the tape of the cell search was immaterial.  McKeithan's attorney's videotape and photographs, in contrast to the letter in Young, are not primary evidence regarding the charges against McKeithan.  Rather, the videotape and photographs at most constitute potentially exculpatory evidence, which prison officials have no constitutional obligation to preserve or consider.  See Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992) (due process does not require prison officials to preserve allegedly intoxicating beverages brewed by prisoner, even though beverage sample may have constituted exculpatory evidence valuable to the prisoner).  McKweon also concluded that McKeithan's proposed inmate witness was not needed to determine the facts, and McKeithan offers only bald assertions in response.  (See DOC Deft.'s Mot. Summ. J., Ex. 15, at 3-4.)  As a prisoner does not have an absolute right to call witnesses, and officials had no obligation to consider the videotape, this claim fails.

McKeithan next asserts that defendant Carol Scire restricted his ability to file grievances, in violation of his constitutional rights.  Scire allegedly labeled five of McKeithan's grievances "frivolous," even though McKeithan allegedly won at least one

10

of those grievances, which demonstrates that the grievance had merit. As a prisoner has no free-standing constitutional right to an effective grievance process, McKeithan cannot succeed on this claim under either the First or the Fourteenth Amendment. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).[8]

McKeithan also asserts several Eighth Amendment claims against DOC defendants. He first contends that defendants denied him the proper means for caring for his nitroglycerin tablets, and that defendant Tretinik falsely reported that McKeithan's echocardiogram was normal. As to the nitroglycerin tablets, defendants proffered undisputed evidence that McKeithan was instructed about how to maintain his tablets in the envelope provided. (DOC Deft.'s Mot. Summ. J., Ex. 21, at 1.) Thus, the record does not support a conclusion that any DOC defendants possessed the requisite scienter to harm McKeithan. McKeithan also failed to carry his burden that Tretinik's statements – whether true or false – had any adverse effect on him, as he subsequently underwent another echocardiogram. (DOC Deft's Mot. Summ. J. Ex. 22 at 1-2.) McKeithan also failed to adduce any evidence that he has a serious pulmonary condition that Dr. Herbik ignored. For these reasons, McKeithan's claims against Tretinik and Herbik fail.[9]

---

[8]McKeithan has not argued that Scire's conduct prevented him from exhausting his administrative remedies in compliance with the PLRA.

[9]For the reasons offered by the District Court, we agree that McKeithan's claims against Herbik in his capacity as a supervisor (e.g., for allegedly rubberstamping the work of Meyers and Yarcwerger) must fail because § 1983 does not provide for supervisory liability. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

11

McKeithan also asserts that the conditions of confinement in the LTSU violated the Eighth Amendment. McKeithan asserts that "psychotic inmates [ ] throw body feces in the showers, exercise cages, and air vents. Body feces, urine and other body fluids would be thrown on you through the gates of the showers and exercise cages . . . ." (Appellant's Br., at 27.) He contends that defendants Zaken and Wilson moved him into cells next to or in the same vent as some of "the worst psychotic inmates." (Id.) Although the District Court concluded that such allegations do not "even arguably rise[] to the level necessary to state an Eighth Amendment claim[,]" we believe that such conditions are sufficiently serious to state a claim. See, e.g., Vinning-El v. Long, 482 F.3d 923, 925 (7th Cir. 2007) (allegations of cell floor covered with water, a broken toilet, feces and blood smeared on the wall, and no mattress to sleep on, stated Eighth Amendment claim); McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir. 2001) (allegation of being forced to remain in feces-covered cell for three days stated Eighth Amendment claim).

We also believe that the record contains evidence from which a reasonable jury could have found that the conditions in the LTSU violated the Eighth Amendment. In response to defendants' motion for summary judgment, McKeithan submitted an unsworn affidavit of a fellow inmate, who described troubling conditions in the LTSU, including, but not limited to, prisoners placing feces in the air vents, flooding "the tier" with feces, and banging on the doors and sinks for days on end. (Pl's Opp'n to Deft's Mot. Summ.

12

J., Ex. 10.)   The affidavit also states that prisoners eat their own feces, spread feces all over themselves and then stand at the door. (Id.).  We note that deliberate indifference may be demonstrated through circumstantial evidence, and that McKeithan has alleged facts from which a reasonable jury could have concluded that prison officials were aware of these conditions and failed to rectify them.  Vinning-El, 482 F.3d at 924-25.[10]

Accordingly, we will vacate the District Court's grant of summary judgment with respect to McKeithan's Eighth Amendment challenge to the conditions of confinement in the LTSU, and its dismissal of McKeithan's claims against Meyers and Yarcgwer with respect to their treatment of McKeithan's eczema and deduction of co-payments for preexisting conditions, and remand for further proceedings consistent with this opinion. We will affirm the orders of the District Court in all other respects.[11]

---

[10]Defendant-appellees assert that, in the alternative, they are entitled to qualified immunity.  We leave that question for the District Court to address in the first instance. However, we note that defendant-appellees' construction of the question appears overly narrow.  The relevant question is *not* the legality of the LTSU, but instead, whether the conditions of confinement in that unit, regardless of the name or custody level of the unit, state a claim for a violation of constitutional rights and whether such conditions violate clearly established law.  Accordingly, we express no opinion on the legality of the LTSU as such, which is now defunct.  We note that other Courts of Appeals have indicated that requiring inmates to live amidst or in proximity to human waste may state a claim under the Eighth Amendment.  See LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972).

[11]McKeithan asserts that summary judgment was improper because discovery was incomplete, but he fails to identify the facts that he seeks to prove through additional discovery, as required by Fed. R. Civ. P. 56(f).